## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ARLINDA JOHNS, | ) | |
| | ) | No.:   16-cv-1102 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JURY DEMANDED |
| | ) | |
| CONTINENTAL TIRES the AMERICAS, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT

Plaintiff, ARLINDA JOHNS, by counsel, Edward R. Moor of Moor Law Office, P.C., complaining of CONTINENTAL TIRES the AMERICAS, LLC, ("Continental"), states as follows for her Complaint at Law:

1.     This is an action for employment discrimination brought to secure relief for harassment, discrimination and retaliation based on race and sex, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.C.S. § 2000e *et seq.* ("Title VII"), the Civil Rights Act of 1870, 42 U.S.C. §1981, as amended ("Section 1981"), and for sexual orientation discrimination pursuant to the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* ("IHRA").  The jurisdiction of this Court is invoked to secure protection of, and to redress deprivation of, rights guaranteed by federal law, and the supplemental jurisdiction of this Court is invoked to secure protection of, and to redress deprivation of, rights guaranteed by state law, which laws provide for injunctive and compensatory relief for illegal discrimination in employment.

### Jurisdiction and Venue

2.     Jurisdiction over this case is conferred on the Court by 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 1988, and 28 U.S.C. § 1367(a).

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in the District and the unlawful employment practices alleged herein were committed in the District.

4.      On or about December 1, 2014, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR"), charge number 2015SF1613, alleging race, sex, and sexual orientation discrimination and retaliation against Continental.  (Ex. A, IDHR Charge).

5.      On April 13, 2016, the IDHR issued a Notice of Substantial Evidence and Notice of Dismissal to Plaintiff and Continental, which is equivalent to a right to sue letter.  (Ex. B, IDHR Investigation Report and Notice of Dismissal and Notice of Substantial Evidence).

6.      Plaintiff had 90 days thereafter to institute a civil action, which she did on June 3, 2016, in the United States District Court for the Southern District of Illinois under case number 16-cv-603.  Said suit was filed less than 30 days after the notice of the right to sue was issued by the IDHR.

7.      Plaintiff's suit under case number 16-cv-603 was dismissed without prejudice to refile on August 18, 2016.

8.      Plaintiff therefore did exhaust her administrative remedies in the IDHR, and this action is a timely refiling of her state law claim in federal court.

9.      The IDHR cross-filed with the Equal Employment Opportunity Commission when it processed Plaintiff's original IDHR charge.

10.     The EEOC issued a Notice of Right to Sue on September 2, 2016.  (Ex. C, EEOC Right to Sue letter).

2

11.     The federal Title VII claims in this action are filed within 90 days of the issuance of the right to sue letter by the EEOC, and this action is therefore timely filed after the exhaustion of administrative remedies in the EEOC.

## Parties

12.     Plaintiff Arlinda Johns ("Plaintiff") currently resides in Chicago, Illinois.  Plaintiff at all times is and was an adult African-American female.  Plaintiff at all relevant times was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f), having been employed by Defendant between October 29, 2012 and October 31, 2014.

13.     Defendant Continental is an LLC authorized to do business in Illinois, and which did business in this District at all relevant times.

14.     Defendant Continental is an "employer" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b) because at all relevant times it engaged in activities affecting commerce and employed over 15 people.

## General Allegations

15.     At all relevant times, Defendant operated a tire manufacturing plant in Mount Vernon, Illinois, which, among other things, manufactured and shipped commercial truck tires.

16.     Arlinda Johns was hired by Defendant Continental on October 29, 2012 as a Final Finish Set Up Technician in Defendant's truck tire Final Finish Department.

17.     The Plaintiff was on probation for the first six months of her employment, and during her probation, and for the six months after it ended, received training on her to perform her employment tasks from her co-workers, six white men Tim Bays, Tim Sidell, Jared Erwin, Steve Valeni, Danny Schuster, Kevin Corbett and one white female, Jolie Ramsey.  These people were Plaintiff's immediate co-workers and were all Final Finish Setup Technicians.

3

18.     In December 2012 co-workers in the Department started explicitly harassing Plaintiff.  Valeni stated that "no one wanted to work with Plaintiff because she was a woman" and he would "have to do all the work."   The plaintiff was reluctant to complain to management because she was on her six-month probation period.

19.     These statements, and many more like them after December 2012, were only intended to harass the Plaintiff.  Co-worker Jolie Ramsey, a white female, had been doing the same job as Valeni and Plaintiff for 13 years.  Women could and did do the work in the Final Finish Department.

20.     Valeni asked Plaintiff out twice in December 2012.  When Plaintiff refused his advances he asked if Plaintiff was gay, and Plaintiff responded that she was.  Valeni told Plaintiff that he could "change" that.

21.     Around Christmas 2012 Tim Bays started calling Plaintiff a "dumb dyke" on every shift, and telling Plaintiff's co-workers that the Plaintiff was a "dumb dyke." In December and January Plaintiff was working with Bays and Danny Schuster on day shift while still being trained.

22.     Around Christmas 2012, Continental shut down between about 12-23-12 and 12-29-12. At this time, Plaintiff was assigned to work on the 2nd shift beginning in February 2013 with Steve Valeni.  In January 2013, before the assignment was effective, Valeni said that he could not work with Plaintiff because women should not be doing the job, that he would have to "carry" her.

23.     Prior to the end of her six -month probation, in February 2013, Plaintiff approached Jonathan Baker, Vice President of Truck Tire Operations at the plant, and told him that Valeni and Bays, who were training her, were harassing her based on the fact that she was black, was a woman and was gay.  Plaintiff told Baker that she did not want to file a complaint because she did not

want to make Bays, Valeni and Tim Sidell hate her any more than they appeared to already, but that the work environment was unbearable. Baker said that he would "take care of it and talk to the guys and make sure that they left her alone."

24.     Baker then talked to Kevin Elko of Human Resources about the Plaintiff's informal complaint, and Plaintiff also talked to Kevin Elko who told her that he would talk her co-worker's supervisor, Allan Ford.

25.     Nothing changed after Plaintiff's first complaint to management.   Valeni continually harassed the Plaintiff calling her a "black dyke," and stating that Continental had "no option" other than to hire her because she was black, female and gay so "they got affirmative actions all rolled into one."   Valeni would also tell Plaintiff on a regular basis that all Plaintiff needed was "a good man" or "some good dick" and she would not be gay anymore, and regularly told Plaintiff and her co-workers that Plaintiff was not strong enough to do the job because she was a woman and that she was not smart enough to do the job because she was black.   Valeni told Plaintiff that when he was in the marines he did not have to work with "niggers" or "bitches" or "cunts" and that now at Continental he had to work with a "woman nigger dyke" who could not do the job.   Plaintiff also complained that Tim Sidell had told her many times that a particular mistake would not have happened if a man was doing the job, and that she was afraid to work with Sidell, because he was trying to sabotage her work by changing calibrations on machines making the Plaintiff's check tests fail, and loosening screws on machines to make the machines give inaccurate readings.

26.     During her six-month probationary period, other than the conversation with Jonathan Baker and Kevin Elko, Plaintiff did not officially complain of the harassment to management out of a fear of jeopardizing her employment.

27.     Plaintiff never received a negative review about her job performance during the course of her employment at Continental.

28.     Once her six-month probation was concluded, in or about May 2013, Plaintiff was made a full time employee as she had, in fact, been able to do her job in the probationary period.

29.     Once off probation, Plaintiff reported the incidents all at the same time to Human Resources in the plant.  She informed Kevin Elko of the above described harassment in detail. Elko again told her that he would speak to "the fellows" and tell them to "back off" and that he would (again) speak to Allen Ford, the group's immediate supervisor.

30.     Complainant also reported again in May 2013 to Elko that Sidell had told her many times between December 2012 and May 2013 that a particular mistake would not have happened if a man was doing the job, and that she was afraid to work with Tim Sidell, because he was trying to sabotage her work by changing calibrations on machines making the Plaintiff's check tests fail, and loosening screws on machines to make the machines give inaccurate readings.

31.     After Plaintiff formally reported the harassment she had been subjected to between December 2012 and May 2013, Tim Bays stopped talking to Plaintiff directly during the remainder of her employment, but kept referring to her as a "dyke" using the word in place of the Plaintiff's name on a daily basis and referring to her a "black dyke" to his other co-workers.  Bays later started leaving copies of job openings on Plaintiff's work bike to suggest that she did not belong in the department, and drew derogatory pictures of Plaintiff with derogatory messages in the work space.

32.     Whatever action was taken after Plaintiff formally reported the above described harassment in May 2013 worked for three to four months, during which time her co-workers did not speak to her at all, other than Valeni who worked with and was training the Plaintiff on the

6

second shift.  Valeni daily told Plaintiff that if she were a man she could do specific tasks like he did, but that because she was a woman she couldn't be trained like he would train a man.

33.     The Plaintiff's co-workers also controlled the hours, shift, and overtime between the eight workers in the Department.  Assignment of work was done by seniority, and if a time slot was open and no one volunteered for it, then the least senior person had to cover even if it meant working eighteen (18) hours a day, seven days a week, a situation known as "stacking" overtime.

34.     On or about April 7, 2013 when Plaintiff did not sign an open slot, she was told about the seniority rule and was forced to work 7 days in a row.

35.     On or about May 20, 2013 Plaintiff, working with Steve Valeni, called on the radio for help and then found Valeni asleep on the job.  She woke Valeni up and he yelled that "a man would have been able to take care of it without disturbing" him.

36.     In June 2013, through her coworkers' manipulation of the seniority rules, Plaintiff was made to work a 12-hour shift, then an 18-hour shift, and then work another twelve-hour shift. She heard her co-workers said "give her all the overtime and watch her burnout and quit."

37.     On or about June 25, 2013, Plaintiff was working with Valeni, when she fell down some stairs and called for help.  No one came.  Then Valeni called for Plaintiff me to come help him.  Plaintiff went over and told him she was going to the medical station.  Valeni told her to "man up." When Plaintiff was seen by the nurse, she was taken to the hospital from work by ambulance for x-rays and was off work for a few days.

38.     Later in June 2013, a mandatory drug screening came back positive for opiates. Justin Drew, the supervisor on duty, sent Plaintiff home. Plaintiff sent in her prescription for Tylenol 3 and was immediately admitted back to work.  But Tim Bays told people that I was a crack head like "most of them."

39.     On or about July 2, 2013 a safety official took Plaintiff into the office to inform her that there had been complaints about her ability to work me working safely, and outlined a work incident in February, saying he learned Plaintiff was on medication after that incident.  Plaintiff responded that her prescription started in June after she had fallen down some stairs and she had not been on medication in February.  The safety official said "oh well" and that Plaintiff's co-workers had expressed a concern for their safety since Plaintiff was "on medication."

40.     On or about July 13, 2013, Plaintiff's co-workers huddled amongst themselves to do shift a change but would not talk to Plaintiff.  Plaintiff went to supervisor Justin Drew, crying, saying that she was tired of Tim Bays and that if he keeps calling her a "dyke" that she was going to quit. After that Justin Drew stopped talking to Plaintiff and would not acknowledge her on the radio when she called for him.

41.     On or about July 20, 2013 Plaintiff was called into the office and told that she could no longer get overtime as an inspector.  She was told that an email had been sent around stating that she was sending defective tires to the warehouse.  Plaintiff was told that she needed to be retrained.  The allegation was that a Quality Assurance inspector told Tim Sidell that it was Plaintiff's inspector's stamp number on the bad tire.  Tim Sidell relayed this information to John Baker, who sent the email to Allen Ford.

42.     In the normal process, if a tire with a defect is sent to the warehouse from the Final Finish Department, the tire is rejected and paperwork is generated.  The warehouse will not know whose inspector stamp is on a tire, and there is no reason for the Quality Assurance inspector to tell a Finish Technician like Tim Sidell that a bad tire had been sent out of the Finish Department to the warehouse.

8

43.     On or about July 28, 2013 Plaintiff worked an overtime shift with Tim Bays. Plaintiff heard Bays say "let that cunt do all the work" and he disappeared.   Plaintiff reported this statement to supervisor Justin Drew who only stated "He's not missing I just saw him," and then walked off.

44.     On or about August 6, 2013, Plaintiff's co-workers presented her the tire she was allegedly missed during inspection.   The tire had a four-inch rod sticking out of it and was plainly defective.  The tire was then placed in the work area which prompted her coworkers to write "dumb fucking dyke" on a chalkboard.

45.     Plaintiff had not sent a tire with four inches of steel protruding from it to the warehouse.

46.     On or about August 12, 2013 Plaintiff was working with Steve Valeni who took his shirt off. Carl Crider, the duty officer told him to put it back on.  Valeni asked Crider "why" and Crider said there are women present.  Valeni stated "who Tray? O she's a dyke" and he continued to work shirtless.

47.     In August 2013, Complainant heard Valeni say that when he was in the service, he did not have to deal with "dykes" and he called Plaintiff a "black dyke."

48.     On or about August 13, 2013 a conveyor in the Final Finish Department backed up creating a large jam of tires.  Plaintiff called for help, and after thirty minutes Valeni showed up and said that "any man would have took care of this, even a black one."

49.     On or about August 26, 2013 machines in the department were down and workers had to stack tires from the conveyor into the department for later examination once the machines were fixed.  Six male temporary workers and Plaintiff stacked tires.   Valeni walked over to me calling me "stupid mother fucker" and stating that "if I can't keep up then I shouldn't have this job,

and that he would break my little dyke ass in half."  Plaintiff went to the supervisor, Danny Windings, crying and told him that she wanted to quit.  Windings told her to not quit, just to go take a break and calm down.  Plaintiff did not come to work the next day.

50.     On or about August 28, 2013 Plaintiff, Steve Valeni, and supervisors Allen Ford and Kevin Elko met.  Plaintiff was reprimanded for telling people she was going to call in sick the day before.  Plaintiff stated "I don't know what you do when a 330 pound man threatens you, but I was afraid. I'm 125 lbs. with boots on."  Valeni then showed a note from the Veterans Administration saying he was off his medications that day and stated that he did not have a problem with "the Blacks" or "the Gays" because he has a cousin "that's that way."  Elko then told Plaintiff that Steve was sorry and said that she should try harder to get along with her coworkers.

51.     On or about September 6, 2013 near the end of the shift, the department lost power. Plaintiff got on the radio yelling for supervisor Justin Drew, as co-worker Sidell was on break. After twenty minutes of the entire department being down, Justin Drew rode up asked Plaintiff what was wrong. Plaintiff told him that she needed an electrician.  As tires were backing up on the conveyor into the department, Justin Drew asks where Sidell was.  Plaintiff told him that Sidell was on break and asked for an electrician. Justin Drew waited fifteen more minutes for Sidell to get off break, the two conferred, and then Drew called an electrician.

52.     On September 21, 2013 Plaintiff's co-workers told the maintenance staff to not talk to Plaintiff or work with her even though to keep the equipment running all members of Plaintiff's department often need to call for maintenance or an electrician.  Tim Sidell told Plaintiff's co-workers to not explain what they were doing to Plaintiff.  Plaintiff later learned from a maintenance man that her co-workers had told the maintenance department not to tell her anything or respond to her calls.

53.     On or about September 22, 2013 Plaintiff went to Jonathan Baker, a Continental Vice President, again distraught in tears saying how mean her co-workers were and that she was tired of the harassment.  Baker stated that he "thought that was taken care of."  Plaintiff told him that the last intervention had brought only a short reprieve.  Baker stated that he was going to "put an end to this once and for all."

54.     On or about October 4, 2013 Plaintiff had a conversation in the BT1 meeting room with Brian Baker (inspector) and Jason Gillespie (tire repairman) who asked her why she kept working with them.

55.     In December 2013 Plaintiff was assigned about 80 hours of overtime and worked every single day of the month, often on 12 and 16 hour shifts.

56.     On or about December 6, 2013, supervisor Danny Windings, assistant supervisor Billy Castor, and Jason Gillespie were in the BT1 meeting room discussing who was going to get the setup tech job when "they get that nigga out the way.  She about to break, they going to get her."

57.     At this time, Plaintiff, who was on federal probation as she had been when she was hired, began court ordered mandated counseling sessions, which she had asked the court to order to help deal with the stress her co-workers were putting her under.  But one of the senior techs had taken three weeks off work so Plaintiff had to cover his shift in addition to hers.  In order to make her counseling sessions, Plaintiff gave the court order to supervisor Steve Capps so that she could clock out one hour early on Thursdays.

58.     On or about December 13, 2013 Plaintiff was told by her co-workers that they were "close to getting rid of her because she had to go to counseling every Thursday to keep from killing herself."

59.     On or about December 16, 2013, Plaintiff came to work to see a tire in her department with words written on them "hold for Tray."   Plaintiff was told that she had left the tire there at the end of her last shift and Tim Seidel stated that if she "couldn't keep up they should give the job to a man."

60.     In January 2014 Plaintiff again went to John Baker to tell him about the renewed fury they had unleashed on her.   Plaintiff cried in his office for over an hour.   Once again Continental Vice President Jonathan Baker told Plaintiff that he would "end this once and for all" but when Plaintiff returned to work she was reprimanded by her supervisor Justin Drew for not telling him she was with a Vice President.

61.     In February 2014, as a result of her plea to Jonathan Baker, Plaintiff had a meeting with Kevin Elko of human resources and Jonathan Baker.   Instead of addressing her complaints of gender, racial and sexual orientation harassment, they told her that she was being written up for missing work without turning in a doctor's note.   Plaintiff produced a copy of her medical excuse:  she had been at work on the day in question with a temperature of 101.2 for which the company nurse had sent her home.   Plaintiff had taken two days off and had returned with a doctor's note.   Plaintiff also showed them the video of her giving the doctor's note to the nurse and was reprimanded for taking a video inside the plant. Baker and Elko did not address any of Plaintiff's discrimination complaints.

62.     In March 2014 a new conveyor line in the department stalled and tires fell from a height of 25 feet.  Valeni told the Plaintiff that if she was a man she would not be afraid to climb up there, and then screamed for Plaintiff to get out his way because he was "tired of cunts" not being able to do their job.

12

63.     On May 4th 2014, Valeni told Plaintiff to "get the fuck away" from him because he was "getting right tired of your kind."

64.     By this point in time, even the cafeteria workers in the plant knew how "they treated the black girl in truck tire."

65.     On or about May 22, 2014 Plaintiff's inspector stamp, stamp number 46, was missing.  Stephen Bishop, a tire repairman, told Plaintiff that he saw Tim Bays drawing Plaintiff's name and picture, stamping her number, and writing "Tray Is the Man."

66.     On or about May 29, 2014, Plaintiff again complained to management, this time to Doug Seger, a supervisor.  He was empathetic and said he was tired of "the stuff going on" and that he was going to intervene and that "they were going to cut this shit out because it was childish." Again nothing changed despite the promise.

67.     On or about June 25, 2014 a maintenance worker named Jay, discovered Plaintiff's site on Facebook.   She had made a post about an upset stomach and he put the following on a department computer as a screen saver: "Tomato +French toast + Bacon = diarrhea."   The maintenance man Jay soon shared Plaintiff's Facebook page with Plaintiff's co-workers.  They found an old post of Plaintiff's acceptance letter from Continental, which Plaintiff had posted before she started work because she was proud of it.  The letter listed Plaintiff's starting position and her salary. Plaintiff's co-workers then started commenting on Plaintiff having the position at all and on her salary.  Plaintiff heard Valeni tell her co-workers that Continental "hasn't had a goddamn nigger here in 40 years, this some bullshit. She should make less than all of us."  Tim Bays said "I can't believe they pay that nigger that much."

68.     In August 2014 when it became apparent to Plaintiff that she would be paired with Tim Sidell during the next quarter, she went to Jonathan Baker and told him that she was afraid to

work with Sidell and that if she had to do the assignment that she wanted a meeting with human resources with a female supervisor present.  At that time, she broke into tears and re-described how her co-workers had treated her over the previous year and a half.   Baker responded that he "thought that stuff was over."   He again assured Plaintiff that he would end the bullying.

69.     Two days later Plaintiff went to Kevin Elko and told him what she has requested of Jonathan Baker.  Elko stated that he was leaving the company and that Baker should handle the issue.

70.     One week later, in August 2014 though Kevin Elko and Jonathan Baker called Plaintiff into an office and asked Plaintiff about some Facebook posts she had made when she was first hired.  Plaintiff was told that a maintenance man named "Jay" had found her page.  Baker said "that's why they don't like you because you post stuff like that."  Plaintiff responded that "Jay" had just found the page about a month ago and asked why her co-workers didn't like her last year? Baker responded that Plaintiff brings the harassment on herself.  They proceeded to tell Plaintiff that she could be terminated because of the post.  Neither Baker nor Elko discussed the racial, gender or sexual orientation harassment that Plaintiff has been complaining about.

71.     On August 17th 2014, an overhead conveyor jammed.  Plaintiff told Valeni that she would go up there after she put a harness on, he stated "Fuck that, get your black ass up there. You want to be a man don't you?"

72.     The final harassing incident took place on October 14, 2014, at which time there was a paper about job openings put on her work bike with a note telling Complainant to get another job because "we don't want you here."

73.     Tim Bays had done this many times in the past to Plaintiff, but as she had just been subjected once again to having her duty to work overtime to fill in for others stacked, she became

angry.  Plaintiff wrote on the paper "You'll be dead before I leave" which Continental construed as a threat, even though it did and could reasonably have meant that Plaintiff intended to stay as long as her co-workers were alive.

74.    Continental used her response to this harassment as an excuse to first suspend her, which it did on or about October 26th, and then to terminate her on October 31, 2014 for violating its policy on "threats," even though it knew that her co-workers had been threatening and harassing the Plaintiff for two years and had never addressed the issue.

75.    Throughout the Plaintiff's two years of employment at Continental she was subject, from December 2013 on to almost daily racial and sexual harassment, and to almost daily harassment based on her sexual orientation.  Continental knew this and permitted it to continue until it fired Plaintiff for complaining about it.

### COUNT I – Title VII Sex Discrimination

76.    Plaintiff adopts paragraphs 1 – 75 above as paragraphs 1 – 75 of Count I, as if fully set forth herein.

77.    Continental violated Title VII by failing to respond to multiple pleas from the Plaintiff to address the systemic gender based harassment that she was subjected and which created a hostile work environment between December 2012 and October 2014.

78.    Continental violated Title VII by discharging the Plaintiff because she was a woman and because she reported gender based harassment by co-workers.

79.    Continental violated Title VII because substantial factor in the Plaintiff's termination was retaliation for her prior reporting of sexual harassment at the hands of her co-workers.

15

80.     Continental's conduct was unreasonable, and alternatively was willfull and wanton or intentional.

81.     As a proximate result of Continental illegal indifference to her federally protected rights, Plaintiff has suffered depression, anxiety, emotional distress, physical illness, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, ARLINDA JOHNS, by counsel, respectfully prays that this Court provide the following legal remedies:

a.      Award Plaintiff lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

b.      Enjoin Continental from discriminating against women by allowing plant workers to create a hostile work environment;

c.      Award Plaintiff the costs of litigation, including reasonable attorney's fees, expert fees and expenses;

d.      Award compensatory damages;

e.      Award punitive damages; and

f.      Award any other relief that this Court deems just.

Plaintiff demands trial by jury.

### COUNT II – Title VII Race Discrimination

76.     Plaintiff adopts paragraphs 1 – 75 above as paragraphs 1 – 75 of Count II, as if fully set forth herein.

16

77.     Continental violated Title VII by failing to respond to multiple pleas from the Plaintiff to address the systemic racial harassment that she was subjected and which created a hostile work environment between December 2012 and October 2014.

78.     Continental violated Title VII by discharging the Plaintiff because she was black and because she reported gender based harassment by co-workers.

79.     Continental violated Title VII because substantial factor in the Plaintiff's termination was retaliation for her prior reporting of racial harassment at the hands of her co-workers.

80.     Continental's conduct was unreasonable, or alternatively, was willfull and wanton or intentional.

81.     As a proximate result of Continental illegal indifference to her federally protected rights, Plaintiff has suffered depression, anxiety, emotional distress, physical illness, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, ARLINDA JOHNS, by counsel, respectfully prays that this Court provide the following legal remedies:

a.      Award Plaintiff lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

b.      Enjoin Continental from discriminating against black workers by allowing plant workers to create a hostile work environment;

c.      Award Plaintiff the costs of litigation, including reasonable attorney's fees, expert fees and expenses;

d.      Award compensatory damages;

e.      Award punitive damages; and

f.      Award any other relief that this Court deems just.

Plaintiff demands trial by jury.

## COUNT III – § 1981 Race Discrimination

76.     Plaintiff adopts paragraphs 1 – 75 above as paragraphs 1 – 75 of Count III, as if fully set forth herein.

77.     Continental violated § 1981 by failing to respond to multiple pleas from the Plaintiff to address the systemic racial harassment that she was subjected and which created a hostile work environment between December 2012 and October 2014.

78.     Continental violated § 1981 by discharging the Plaintiff because she was black and because she reported racial harassment by co-workers.

79.     Continental violated § 1981 because substantial factor in the Plaintiff's termination was retaliation for her prior reporting of racial harassment at the hands of her co-workers.

80.     Continental's conduct was unreasonable, or alternatively was willfull and wanton or intentional.

81.     As a proximate result of Continental illegal indifference to her federally protected rights, Plaintiff has suffered depression, anxiety, emotional distress, physical illness, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, ARLINDA JOHNS, by counsel, respectfully prays that this Court provide the following legal remedies:

a.      Award Plaintiff lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

b.      Enjoin Continental from discriminating against black workers by allowing plant workers to create a hostile work environment;

c.      Award Plaintiff the costs of litigation, including reasonable attorney's fees, expert fees and expenses;

d.      Award compensatory damages;

e.      Award punitive damages; and

f.      Award any other relief that this Court deems just.

Plaintiff demands trial by jury.


## COUNT IV – IHRA VIOLATION

76.     Plaintiff adopts paragraphs 1 – 75 above as paragraphs 1 – 75 of Count IV, as if fully set forth herein.

77.     Continental violated the IHRA by failing to respond to multiple pleas from the Plaintiff to address the systemic sexual orientation harassment that she was subjected and which created a hostile work environment between December 2012 and October 2014.

78.     Continental violated the IHRA by discharging the Plaintiff because she was gay and because she reported sexual orientation harassment by co-workers.

79.     Continental violated the IHRA because substantial factor in the Plaintiff's termination was retaliation for her prior reporting of sexual orientation harassment at the hands of her co-workers.

80.     Continental's conduct was unreasonable, or alternatively was willfull and wanton or intentional.

81.     As a proximate result of Continental illegal indifference to her state law protected rights, Plaintiff has suffered depression, anxiety, emotional distress, physical illness, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, ARLINDA JOHNS, by counsel, respectfully prays that this Court provide the following legal remedies:

a.      Award Plaintiff lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

b.      Enjoin Continental from discriminating against homosexual workers by allowing plant workers to create a hostile work environment;

c.      Award Plaintiff the costs of litigation, including reasonable attorney's fees, expert fees and expenses;

d.      Award compensatory damages;

e.      Award punitive damages; and

f.      Award any other relief that this Court deems just.

Plaintiff demands trial by jury.


                                        /s/  Edward R. Moor
                                        Attorney for Plaintiff

Edward R. Moor, ARDC# 6205169
Moor Law Office, P.C.
One N. LaSalle Street, Suite 600
Chicago, Illinois 60602
312-726-6207
erm@moorlaw.net

***Attorney for Plaintiff***

# EXHIBIT A –

# IDHR CHARGE CROSS FILED WITH EEOC

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.

RECEIVED

DEC 29 2014   # 15M1215.11

Dept. of Human Rights
Springfield

| AGENGY | CHARGE NUMBER |
|---|---|
| ☒ IDHR | 2015SF1613 |
| ☐ EEOC | |

## Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.) | TELEPHONE NUMBER (include area code) |
|---|---|
| Ms. Arlinda Johns | 618-751-1259 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 712 Ruggerio | Herrin, Illinois 62948 | 10 / 19 / 1975 |
| | | M    D    Y |

**NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)**

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE NUMBER (include area code) |
|---|---|---|
| Continental General Tire | | 618-242-1700 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 11525 N. IL HWY 142 | Mt. Vernon, Illinois 62864 | Jefferson |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| Sex; female, Race; black, Sexual Orientation; homosexual, Retaliation | 10/22/2014 |
| | ☐ CONTINUING ACTION |

**THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:**

I.    A.    **ISSUE/BASIS**
        Harassment from June 14, 2014 to October 22, 2014 because of Sex; female.

      B.    **PRIMA FACIE ALLEGATIONS**
        1.    I am female.
        2.    I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
        3.    From June 14, 2014 to October 22, 2014, I reported to John Baker, Steve Capps, Doug Sieger, Justin Drew, Ryan Laney, Kevin Elko and JD Burke that I was being harassed by my coworkers but the harassment continued.
        4.    It is my belief that Respondent does not permit similarly situated male employees to be harassed.

Page 1 of 3                     **CONTINUED**                     rys

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME |
|---|---|
| | THIS 22 DAY OF December , 2014 |
| | X _Jodi L. Miller_ |
| | NOTARY SIGNATURE |

OFFICIAL SEAL
JODI L. MILLER
Notary Public, State of Illinois
My Commission Exp 2/03/2015

NOTARY STAMP

X _Arlinda Johns_   12/22/14
SIGNATURE OF COMPLAINANT   DATE

I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief

EEO-5 FORM (Rev. 11/09-INT)

Charge Number:  2015SF1613
Control Number:  15M1215.11
Complainant:  Johns
Page 2 of 3

II.        A.      **ISSUE/BASIS**
Harassment from June 14, 2014 to October 22, 2014 because of race; black.

        B.      **PRIMA FACIE ALLEGATIONS**
1. My race is black.
2. I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3. From June 14, 2014 to October 22, 2014, I reported to John Baker, Steve Capps, Doug Sieger, Justin Drew, Ryan Laney, Kevin Elko, and JD Burke that I was being harassed by my coworkers but the harassment continued.
4. It is my belief that Respondent does not permit similarly situated non-black employees to be harassed.

III.     A.      **ISSUE/BASIS**
Harassment from June 14, 2014 to October 22, 2014 because of sexual orientation; homosexual.

        B.      **PRIMA FACIE ALLEGATIONS**
1. My sexual orientation is homosexual.
2. I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3. From June 14, 2014 to October 22, 2014, I reported to John Baker, Steve Capps, Doug Sieger, Justin Drew, Ryan Laney, Kevin Elko, and JD Burke that I was being harassed by my coworkers but the harassment continued.
4. It is my belief that Respondent does not permit similarly situated heterosexual employees to be harassed.

IV.     A.      **ISSUE/BASIS**
Termination on October 22, 2014 because of sex; female.

        B.      **PRIMA FACIE ALLEGATIONS**
1. I am female.
2. I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3. On October 22, 2014, John Baker and Meg Whittendorf terminated me for alleged misconduct after I wrote a letter to my coworkers telling them to stop harassing me.
4. It is my belief that Respondent has not terminated similarly situated male employees for opposing harassment.

Charge Number:  2015SF1613
Control Number:  15M1215.11
Complainant:  Johns
Page 3 of 3

**V.**      **A.**      **ISSUE/BASIS**
Termination on October 22, 2014 because of race; black.

        **B.**      **PRIMA FACIE ALLEGATIONS**
1. My race is black.
2. I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3. On October 22, 2014, John Baker and Meg Whittendorf terminated me for alleged misconduct after I wrote a letter to my coworkers telling them to stop harassing me.
4. It is my belief that Respondent has not terminated similarly situated non-black employees for opposing harassment.

**VI.**      **A.**      **ISSUE/BASIS**
Termination on October 22, 2014 because of sexual orientation; homosexual.

        **B.**      **PRIMA FACIE ALLEGATIONS**
1. My sexual orientation is homosexual.
2. I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3. On October 22, 2014, John Baker and Meg Whittendorf terminated me for alleged misconduct after I wrote a letter to my coworkers telling them to stop harassing me.
4. It is my belief that Respondent has not terminated similarly situated heterosexual employees for opposing harassment.

**VII.**      **A.**      **ISSUE/BASIS**
Termination on October 22, 2014 because of retaliation.

        **B.**      **PRIMA FACIE ALLEGATIONS**
1. In September 2014, I opposed discrimination to John Baker.
2. I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3. On October 22, 2014, John Baker and Meg Whittendorf terminated me for alleged misconduct after I wrote a letter to my coworkers telling them to stop harassing me.
4. It is my belief that Respondent has not terminated similarly situated employees who did not oppose discrimination.

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form. | ☒ IDHR | 2015SF1613 |
| # 15M1215.11A | ☐ EEOC | |

**Illinois Department of Human Rights and EEOC**

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.) | TELEPHONE NUMBER (include area code) |
|---|---|
| Ms. Arlinda Johns | 618-751-1259 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 712 Ruggerio | Herrin, Illinois 62948 | 10 / 19 / 1975 |
| | | M   D   Y |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE NUMBER (include area code) |
|---|---|---|
| Continental Tire the Americas, LLC | | 618-242-1700 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 11525 N. IL HWY 142 | Mt. Vernon, Illinois 62864 | Jefferson |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| Sex; female, Race; black, Sexual Orientation; homosexual, Retaliation | 10/22/2014 |
| | ☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

**TECHNICAL AMENDMENT**
*This technical amendment is being made to correct Respondent's legal name.

I.   A.   **ISSUE/BASIS**
Harassment from June 14, 2014 to October 22, 2014 because of Sex; female.

   B.   **PRIMA FACIE ALLEGATIONS**
1. I am female.
2. I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3. From June 14, 2014 to October 22, 2014, I reported to John Baker, Steve Capps, Doug Sieger, Justin Drew, Ryan Laney, Kevin Elko, and JD Burke that I was being harassed by my coworkers but the

Page 1 of 3                              **CONTINUED**                                              rys

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME THIS 27 DAY OF May , 2015 X _____ NOTARY SIGNATURE |
|---|---|
| **OFFICIAL SEAL** **JULIE ELDERS** Notary Public - State of Illinois My Commission Expires Mar 26, 2019 NOTARY STAMP | X _Arlinda Johns_  5-27-15 SIGNATURE OF COMPLAINANT      DATE I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief |

EEO-5 FORM (Rev. 11/09-INT)

Charge Number:   2015SF1613
Control Number:  15M1215.11A
Complainant:     Arlinda Johns
Page 2 of 3

harassment continued.

4.   It is my belief that Respondent does not permit similarly situated male employees to be harassed.

**II.**   **A.**   **ISSUE/BASIS**

Harassment from June 14, 2014 to October 22, 2014 because of race; black.

    **B.**   **PRIMA FACIE ALLEGATIONS**

1.   My race is black.
2.   I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3.   From June 14, 2014 to October 22, 2014, I reported to John Baker, Steve Capps, Doug Sieger, Justin Drew, Ryan Laney, Kevin Elko, and JD Burke that I was being harassed by my coworkers but the harassment continued.
4.   It is my belief that Respondent does not permit similarly situated non-black employees to be harassed.

**III.**   **A.**   **ISSUE/BASIS**

Harassment from June 14, 2014 to October 22, 2014 because of sexual orientation; homosexual.

    **B.**   **PRIMA FACIE ALLEGATIONS**

1.   My sexual orientation is homosexual.
2.   I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3.   From June 14, 2014 to October 22, 2014, I reported to John Baker, Steve Capps, Doug Sieger, Justin Drew, Ryan Laney, Kevin Elko, and JD Burke that I was being harassed by my coworkers but the harassment continued.
4.   It is my belief that Respondent does not permit similarly situated heterosexual employees to be harassed.

**IV.**   **A.**   **ISSUE/BASIS**

Termination on October 22, 2014 because of sex; female.

    **B.**   **PRIMA FACIE ALLEGATIONS**

1.   I am female.
2.   I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3.   On October 22, 2014, John Baker and Meg Whittendorf terminated me for alleged misconduct after I wrote a letter to my coworkers telling them to stop harassing me.
4.   It is my belief that Respondent has not terminated similarly situated male employees for opposing harassment.

Charge Number:   2015SF1613
Control Number:   15M1215.11A
Complainant:   Arlinda Johns
Page 3 of 3

**V.**    **A.**    **ISSUE/BASIS**
Termination on October 22, 2014 because of race; black.

**B.**    **PRIMA FACIE ALLEGATIONS**
1.   My race is black.
2.   I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3.   On October 22, 2014, John Baker and Meg Whittendorf terminated me for alleged misconduct after I wrote a letter to my coworkers telling them to stop harassing me.
4.   It is my belief that Respondent has not terminated similarly situated non-black employees for opposing harassment.

**VI.**    **A.**    **ISSUE/BASIS**
Termination on October 22, 2014 because of sexual orientation; homosexual.

**B.**    **PRIMA FACIE ALLEGATIONS**
1.   My sexual orientation is homosexual.
2.   I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3.   On October 22, 2014, John Baker and Meg Whittendorf terminated me for alleged misconduct after I wrote a letter to my coworkers telling them to stop harassing me.
4.   It is my belief that Respondent has not terminated similarly situated heterosexual employees for opposing harassment.

**VII.**    **A.**    **ISSUE/BASIS**
Termination on October 22, 2014 because of retaliation.

**B.**    **PRIMA FACIE ALLEGATIONS**
1.   In September 2014, I opposed discrimination to John Baker.
2.   I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3.   On October 22, 2014, John Baker and Meg Whittendorf terminated me for alleged misconduct after I wrote a letter to my coworkers telling them to stop harassing me.
4.   It is my belief that Respondent has not terminated similarly situated employees who did not oppose discrimination.

DWW/yjt

# EXHIBIT B –

# IDHR INVESTIGATION REPORT AND NOTICE OF DISMISSAL AND SUBSTANTIAL EVIDENCE

# STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
### INVESTIGATION REPORT

**Complainant:**  Ms. Arlinda Johns                     **IDHR No.:**  2015SF1613
**Respondent:**   Continental Tire the Americas, LLC    **EEOC No.:**  21BA50535


**Investigator:**  DWW          **Supervisor:**  ⟨signature⟩     **Date:** 2-29-16

**Issue/Basis:**                                              **Finding:**
A.  Harassment/sex, female                                   A.  Substantial Evidence
B.  Harassment/ race, black                                  B.  Substantial Evidence
C.  Harassment/sexual orientation, homosexual                C.  Substantial Evidence
D.  Termination/sex, female                                  D.  Lack of Substantial Evidence
E.  Termination/race, black                                  E.  Lack of Substantial Evidence
F.  Termination/sexual orientation, homosexual               F.  Lack of Substantial Evidence
G.  Termination/retaliation                                  G.  Lack of Substantial Evidence

**Jurisdiction:**

Alleged violation: A. June 14, 2014 to October 22, 2014
                   B. June 14, 2014 to October 22, 2014
                   C. June 14, 2014 to October 22, 2014
                   D. October 22, 2014, corrected to October 31, 2014[1]
                   E. October 22, 2014, corrected to October 31, 2014
                   F. October 22, 2014, corrected to October 31, 2014
                   G. October 22, 2014, corrected to October 31, 2014
Charge filed:          December 1, 2014
Charge perfected:      December 23, 2014
Amendments:            May 27, 2015
Number of employees:   3146

**Verified Response:**

Due:               March 6, 2015
Received:          February 27, 2015
Timely:   x   Untimely:  ___          **Group Exhibit A**
If untimely, good cause shown:   Yes  ___   No  ___

---

[1] Complainant's charge lists the date of harm as October 22, 2014. It is uncontested, and documentation supports, that the correct date of Complainant's discharge is October 31, 2014.

Charge No.: 2015SF1613
Page 2 of 14

**Employment Data:**

Respondent employs 3146 individuals. Eight individuals work in the Commercial Vehicle Tire Department where Complainant was employed. Seven of the eight are male, while one is female. Seven of the eight are race, white, while one is race, black. Respondent's data does not track employees' sexual orientation or opposition to unlawful discrimination.

**Uncontested Facts:**

1. Complainant began employment at Respondent on October 29, 2012.
2. Complainant's job was Final Finish Set Up Technician which involved preventive maintenance on tires, tire inspection, balancing and calibrating tires.
3. Just before Complainant left work on October 14, 2014, she left a note on her equipment, which stated, in part, "You'll be dead before I leave." **(EXHIBIT B)**
4. Complainant was discharged on October 31, 2014 **(EXHIBIT C).**

**Complainant's Allegations Count A:**

Complainant alleges that she was harassed, based upon her sex, female.

**Respondent's Defense-Count A:**

Respondent's position is that any incident reported by Complainant was investigated and addressed as needed, dependent upon the investigation results and severity of the situation.

**Complainant's Allegations Count B:**

Complainant alleges that she was harassed, based upon her race, black.

**Respondent's Defense-Count B:**

Respondent's position is that any incident reported by Complainant was investigated and addressed as needed, dependent upon the investigation results and severity of the situation.

**Complainant's Allegations Count C:**

Complainant alleges that she was harassed, based upon her sexual orientation, homosexual.

**Respondent's Defense-Count C:**

Respondent's position is that any incident reported by Complainant was investigated and addressed as needed, dependent upon the investigation results and severity of the situation.

**Investigation Summary-Counts A through C:**

A.   **Complainant's Evidence.**

1. Complainant alleges that she was harassed, by co-workers, from the time she began employment with Respondent. During her first six months on the job, she did not present

Charge No.: 2015SF1613
Page 3 of 14

any problems to management due to being on probation. Once her six month probation was concluded, in or about May, 2013, Complainant "gathered up" incidents and reported them all at the same time. She reported harassing incidents to **Kevin Elko**, (sex, male; race, white; sexual orientation, heterosexual; no prior opposition to unlawful discrimination) (former) Human Resources ("Elko"), by advising him that **Tim Bays,** (sex, male; race, white; sexual orientation, heterosexual) non-management co –worker ("Bays"), who was training Complainant, would refer to her as a dumbass. After he found out Complainant is sexual orientation, homosexual, he started calling her a dumb dike. Complainant also reported that **Steve Valeni**, (sex, male; race, white; sexual orientation, heterosexual) non-management co-worker ("Valeni"), referred to Complainant as a "black dike" and told Complainant that Respondent had no option other than to hire her because she's black, female and gay so they got affirmative actions all rolled into one. Valeni would also say that all Complainant needed was "a good man" or "some good dick" and that Complainant was not strong enough to do the job and that she was not smart enough to do the job because she's a black person. Complainant also reported being afraid to work with **Tim Sidell**, (sex, male; race, white; sexual orientation, heterosexual) non-management co-worker ("Sidell") because he was trying to sabotage her work by changing machine calibration and loosening screws, although she heard that Sidell did these things to others too. Sidell would also comment that a particular mistake would not have happened if a man was doing the job. Elko said he would have the supervisor, Allen Ford, tell the others to back off. Complainant stated that whatever action was taken worked for three to four months, during which time her co-workers did not speak to her at all.

2. In or about August, 2013, Complainant heard Valeni say that when he was in the service, he did not have to deal with dikes and referring to her as "that black dike". In or about September, 2013, there was a machine break down prompting employees to have to stack tires to wait for the machine to be fixed. Valeni got mad and was targeting his anger toward Complainant (rather than any of the male employees who were stacking tires). Valeni was cursing in Complainant's face, called her a "fucking cunt" and said, "I'll break you in half". Co-workers heard Valeni's comments but management did not, however, a supervisor named Danny (no identifying information known to Complainant) was on his way to the area due to having heard about the incident. Complainant told Danny that she was going to quit and that she was afraid of Valeni. On the following day, Complainant and Valeni had to meet with Human Resources. Valeni had brought in a note from the Veterans Administration saying he had been off his medication, which Human Resources viewed that as an acceptable reason for Valeni's actions and asked Complainant if that was ok, to which she felt she had no option other than to agree.

3. In or about May, 2014, an employee (name unknown) found Complainant's Facebook page on which she had posted a picture of her letter from Respondent in which she was offered her current position and the salary was listed (from a Facebook post in 2011), after which co-workers made many comments about her having the position and her salary. Valeni said Respondent "hasn't had a goddamn nigger here in 40 years" and he would tell co-workers that they "can tell the dike" information about a work activity. Bays said "I can't believe they gave that nigger that much" in reference to her pay. Bays was putting job postings, for other locations in Respondent, onto Complainant's work

Charge No.: 2015SF1613
Page 4 of 14

bike. Bays also drew chalk drawings of a female with dreadlocks with comments of "Tray is the man".   (Complainant is known as "Tray".) Complainant reported these incidents to **Jonathan Baker,** (sex, male; race, white; sexual orientation, heterosexual; no prior opposition to unlawful discrimination) Department Manager for Commercial Tire Vehicle (CVT) ("Baker"), who talked with Complainant along with Elko. Complainant told both about the use of the word "nigger" and said she was ready to quit. Baker's response was to tell Complainant that the offer letter is confidential. Complainant does not know if management took any actions.  In or about August, 2014, Complainant went back to Baker and Elko and told them of additional incidents of the co-workers using the word "nigger", sabotaging her work and "stacking" the overtime schedule (by forcing Complainant to take all of the overtime for a period of time and then allowing her to get no overtime for a period of time).  At that time Baker and Elko said they were investigating and told Complainant to return to work with Sidell, whom Complainant had said she was afraid of and did not want to work with.

4. Complainant stated that the final harassing incident took place on October 14, 2014, at which time there was a paper about job openings put on her bike (work equipment) with a note telling Complainant to get another job because "we don't want you here."

5. **Stephen Bishop,** (sex, male; race, white; sexual orientation, heterosexual; no prior opposition to unlawful discrimination) Truck Tire Repairman ("Bishop") stated that he once heard co-worker **John Snieder,** (sex, male; race, white; sexual orientation, heterosexual), say, "I know I can get her to turn back over to men real quick" in reference to Complainant. Snieder was not speaking directly to Complainant but she overheard the comment.  Bishop also stated that he once heard a co-worker call Complainant "a worthless lazy nigger" and said the only reason she got that the job was "because she's a nigger". Bishop does not know if Complainant notified management of these comments.

B.   **Respondent's Evidence.**

1. Respondent has an anti-discrimination policy **(EXHIBIT D).**

2. Complainant was hired on October 29, 2012, by Baker and **Margaret (Meg) Hattendorf,** (sex, female; race, white; sexual orientation, heterosexual; no prior opposition to unlawful discrimination) Human Resources Business Partner for Commercial Tire Vehicle (CVT) Department ("Hattendorf"), and discharged by them on October 31, 2014.

3. Baker stated that, on or about September 14, 2014, Complainant approached him about being harassed by **Justin Drew,** (sex, male; race, white; sexual orientation, heterosexual; no prior opposition to unlawful discrimination) Final Finish Supervisor Commercial Tire Vehicle (CVT) ("Drew"), who had talked with her about sleeping on the job and told her that she should not be in the location that she was in, nor be on her cell phone.  Baker talked with Drew about this situation.  Baker then advised Complainant that Drew was doing his job.  Complainant did not present any discriminatory basis related to this incident. **(EXHIBIT E)**

4. Baker stated that, on or about July 14, 2014, Complainant approached him about being harassed by **Danny Windings**, (sex, male; race, white; sexual orientation unknown; prior opposition to unlawful discrimination unknown) Supervisor ("Windings"), who had questioned her about not wearing steel toe shoes. Windings learned that Complainant's shoes did have steel toes. Baker stated that Windings was doing his job. Complainant did not present any discriminatory basis related to this incident. **(EXHIBIT E)**

5. Baker stated that, sometime prior to July 14, 2014 (exact date unknown), Complainant approached him about being harassed by way of someone having drawn a stick figure of her and wrote "Tray (Complainant's nick name) is the man" on it. Complainant did not know who drew it. Baker was unable to view it as the drawing was gone when he went to see it. Baker talked with the supervisors and had them present to employees that there was not to be something like that written and if there was a problem, it needed to be brought to management. He also talked with supervisors and employees in that immediate area but none knew anything about it. **(EXHIBIT E)**

6. Baker stated that, sometime prior to July 14, 2014 (exact date unknown), Complainant approached him about being harassed by way of someone leaving notes written on tires. Baker observed one or two tires on which it was written "hold for Tray". Complainant did not know what this meant. Baker learned that co-worker, Tim Sidell had written this because he was tired of coming into the area and finding it a mess with tires everywhere and not organized. "Hold for Tray meant for the tires to be left for Complainant to clean up when she next came in. Baker advised Sidel that he is not to do that again and that this type of situation is to be presented to management to deal with. Baker also advised Complainant that she is to have her area clean at end of her shift. Complainant did not present any discriminatory basis related to this incident. **(EXHIBIT E)**

7. Baker stated that, at the onset of her employment (exact date unknown), Complainant presented that her co-workers did not want to work with her or train her, but gave no details. Baker talked with employees, who indicated that Complainant won't listen because she knows everything and that Complainant would scream, yell and use vulgar language and that, although they were willing to work with her, they would not train her because she knows everything. Baker reported these responses to Complainant and told her to listen to others, even if she already knew what was being taught. A few weeks later, he questioned Complainant about how the job was going to which Complainant said it was going good and she had no complaints. **(EXHIBIT E)**

8. Baker stated that, on or about July 14, 2014, he learned that Complainant had pictures of Respondent's machinery, which she had put on her Facebook posts, along with a copy of her job offer letter and a reference to her job being "slave to Continental Tire". This was addressed with Complainant, who admitted to these posts and agreed to remedy them. **(GROUP EXHIBIT F)**

9. Baker stated that Complainant did not present incidents of harassment going back to the onset of her employment, other than co-workers not wanting to work with her, which was

Charge No.: 2015SF1613
Page 6 of 14

not presented as being due to Complainant's sexual orientation, due to Complainant not being strong enough, nor due to her not being smart enough based upon her race, black. Complainant never presented Tim Sidel being mean to her, nor any problems with Tim Bays. Complainant never presented co-workers use of terms "black dike", "dumb dike", "dumbass".

10. On October 14, 2014, Complainant left a note on her bike, with the note she wrote being on the same paper than someone else left on the bike for her.  The original paper left by someone else did not reference that Complainant should "get another job because we don't want you here" **(EXHIBIT B).**

11. **Steve Capps,** (sex, male; race, white; sexual orientation, heterosexual; no prior opposition to unlawful discrimination) Lead Supervisor in Curing and Final Finish Department ("Capps") stated that there was one instance (date unknown) in which Complainant said she felt that co-workers did not want to work with her. There were no details given. Complainant's co-workers denied having an issue with Complainant, but said they felt she would not listen when they tried to give her advice on doing her job. Capps advised all of the employees that they needed to work with her and to work together. There was no presentation of a discriminatory basis.

12. Drew stated that there was an instance where upper management had learned that Complainant was sleeping on the job and Drew witnessed upper management talking with Complainant about the incident.  Drew stated that there five occasions in which he addressed Complainant being unable to be located.  He stated that there were times when Complainant would be gone for one to one and one half hours at a time.  Drew could not confirm where she was or what she was doing and Complainant always had an excuse. Every supervisor had the same complaint about Complainant.  Whenever Complainant was questioned by him, she would advise him that he was harassing her.   No discriminatory basis was ever given.

13. Elko stated that there was one incident in which Complainant and Valeni, who worked together, had a verbal altercation, but to Elko's knowledge, there were no comments relating to race, nor to sexual orientation.  Elko stated that he and Baker talked with Complainant regarding her Facebook posts, which included pictures taken inside Respondent, Complainant's offer letter from Respondent and Complainant's statement that she was a "slave to Continental".  Complainant was advised that such actions were not allowed.  Elko does not recall any incident of Complainant presenting to him any comments being made to her that were racial, nor relating to her gender, nor sexual orientation.

C.   **Complainant's Rebuttal.**

1. Complainant has no knowledge of who John Sneider is and attributes no discriminatory comments or acts to Sneider.

**Analysis-Count A:**

Charge No.: 2015SF1613
Page 7 of 14

Complainant alleges that she was harassed based upon her sex, female. Complainant presented that co-workers did not want to work with her and made comments to, or about, her. Complainant stated that one co-worker commented that Respondent had no option other than to hire her because she's black, female and gay so they got affirmative actions all rolled into one and another co-worker stated that a particular mistake would not have happened if a man was doing the job.   Complainant alleges that she presented these instances to Respondent's management, and that, even though the incidents would cease for awhile, they would ultimately resume again.

Respondent presented some complaints alleged by Complainant, which were addressed by management and supported in Respondent's documentation. Respondent denied any complaints referencing gender.

## Findings and Conclusion-Count A:

A finding of <u>substantial evidence</u> is recommended because:
Complainant alleges that harassing comments, relating to her sex, female, were made by co-workers and that she reported these comments to management. The harassing comments continued. Respondent denied being notified of incidents relating to Complainant's sex, female.

Because of conflicting witness statements, this charge is best suited to be heard before a trier of fact so that credibility can be determined.

## Analysis-Count B:

Complainant alleges that she was harassed based upon her race, black. Complainant presented that co-workers did not want to work with her and made comments to, or about, her. Complainant stated that a co-worker commented that she was not smart enough to do the job because she's a black person.   Complainant stated that a co-worker also commented that Respondent had no option other than to hire her because she's black, female and gay so they got affirmative actions all rolled into one. Complainant alleges she was referred to as "nigger." Complainant alleges that she presented these instances to Respondent's management, and that, even though the incidents would cease for awhile, they would ultimately resume again.

Respondent presented some complaints alleged by Complainant, which were addressed by management and supported in Respondent's documentation.   None of those complaints referenced race. Respondent stated it was not made aware of any racial comments.

Additionally, Respondent stated, and documentation supports that Respondent has addressed multiple, non-discriminatory, complaints alleged by Complainant during her employment.

## Findings and Conclusion-Count B:

A finding of <u>substantial evidence</u> is recommended because:

Complainant alleges that harassing comments, relating to her race, black, were made by co-workers and that she reported these comments to management. The harassing comments continued. Respondent denied being notified of incidents relating to Complainant's race, black.

Because of conflicting witness statements, this charge is best suited to be heard before a trier of fact so that credibility can be determined.

## Analysis-Count C:

Complainant alleges that she was harassed based upon her sexual orientation, homosexual. Complainant presented that co-workers commented that they did not want to work with "that black dike", that they don't believe in homosexuality, that all Complainant needed was "a good man" or "some good dick" and called Complainant a "dumb dike". Complainant stated that a co-worker also commented that Respondent had no option other than to hire her because she's black, female and gay so they got affirmative actions all rolled into one. Complainant alleges that she presented these instances to Respondent's management, and that, even though the incidents would cease for awhile, they would ultimately resume again.

Respondent presented some complaints alleged by Complainant, which were addressed by management and supported in Respondent's documentation. None of those complaints referenced sexual orientation. Respondent stated it was not made aware of any comments referencing sexual orientation.

Additionally, Respondent stated, and documentation supports that Respondent has addressed multiple, non-discriminatory, complaints alleged by Complainant during her employment.

## Findings and Conclusion-Count C:

A finding of lack of substantial evidence is recommended because:
Complainant alleges that harassing comments, relating to her sexual orientation, were made by co-workers and that she reported these comments to management. The harassing comments continued. Respondent denied being notified of incidents relating to Complainant's sexual orientation.

Because of conflicting witness statements, this charge is best suited to be heard before a trier of fact so that credibility can be determined.

## Complainant's Allegations Count D:

Complainant alleges that she was discharged based upon her sex, female.

## Respondent's Defense-Count D:

Charge No.: 2015SF1613
Page 9 of 14

Respondent's position is that Complainant was discharged, in accordance with Respondent's policy, for making a threat of violence.

**Complainant's Allegations Count E:**

Complainant alleges that she was discharged based upon her race, black.

**Respondent's Defense-Count E:**

Respondent's position is that Complainant was discharged, in accordance with Respondent's policy, for making a threat of violence.

**Complainant's Allegations Count F:**

Complainant alleges that she was discharged based upon her sexual orientation, homosexual.

**Respondent's Defense-Count F:**

Respondent's position is that Complainant was discharged, in accordance with Respondent's policy, for making a threat of violence.

**Complainant's Allegations Count G:**

Complainant alleges that she was discharged in retaliation for opposing unlawful discrimination.

**Respondent's Defense-Count G:**

Respondent's position is that Complainant was discharged, in accordance with Respondent's policy, for making a threat of violence.

**Investigation Summary-Counts D through G:**

A.    **Complainant's Evidence.**

1.    See Complainant's evidence Counts A through C.

2.    Complainant stated that, upon discovering that a paper about job openings had been put on her bike with a note telling Complainant to get another job because we don't want you here, Complainant responded by writing a note (on the same paper), which she left taped it to her bike before leaving work for the day. Complainant admitted that the note contained the sentence, "You'll be dead before I leave." Complainant told her supervisor that she put this note on her bike and told him to go get it and then Complainant clocked out and went home. Upon her return, on October 22, 2014, she was suspended pending investigation of the incident. Complainant remained suspended until her discharge on October 31, 2014.

B.    **Respondent's Evidence.**

Charge No.: 2015SF1613
Page 10 of 14

1. See Respondent's evidence Counts A through C.

2. Respondent has a discipline/discharge policy **(EXHIBIT G)**, which allows for discipline up to, and including discharge, for various violations, including "Engaging in acts of violence or making threats of violence".

3. Baker stated that, on October 14, 2014, Capps notified him of a paper containing a handwritten note that Complainant had left on her bike when she completed her shift. Baker retrieved the paper and noted the death threat that had been written on it and signed by Complainant. **(EXHIBIT B)** Baker forwarded the paper to Human Resources. Complainant was already gone for the day and was scheduled to be off work until the following week. Baker and Hattendorf met with Complainant on October 21, 2014, at which time Complainant said she was tired of bending over and taking it in the ass, said was tired of being called numerous names, said the men at Respondent are allowed to say whatever they want to say and that she did not want to work with Tim Sidel because he had made her job a living hell for past two years. Complainant was suspended pending investigation.

4. Hattendorf stated that, based upon the severity of the situation and policy indicating threats would lead to immediate discharge, Complainant was discharged as of October 31, 2014. The recommendation for discharge was made by Baker and the decision to discharge was made by Hattendorf, Baker and **Mike Wagoner**, (sex male; race, white; sexual orientation unknown; prior opposition to unlawful discrimination unknown) Human Resources Director ("Wagoner").

5. Respondent provided documentation of four individuals, Tim Wimberly, Mike Sauls, Michael Runyon and Eric Meadows, all of whom are sex, male; race, white; sexual orientation unknown and have no prior opposition to unlawful discrimination, who were discharged, prior to Complainant, for violence in the workplace **(GROUP EXHIBIT H).**

C.  **Complainant's Rebuttal.**

1. Complainant did not provide any additional information other than what was previously identified in the Complainant's Evidence section.

**Analysis-Count D:**

Complainant alleges that she was discharged based upon her sex, female. Complainant asserts that, on October 14, 2014, a paper relating to a job posting was left on her bike (work equipment). It is uncontested that Complainant hand-wrote on the paper, including the statement "You'll be dead before I leave" and signed the paper.

Respondent provided its discipline/discharge policy which allows for discipline up to, and including discharge, for various violations, including "Engaging in acts of violence or making threats of violence". Respondent stated that Complainant was discharged based upon the severity of the incident and in accordance with its policy. Respondent provided documentation of four sex, male comparatives, who were also discharged for violence in the workplace.

**Findings and Conclusion-Count D:**

A finding of <u>lack of substantial evidence</u> is recommended because:

The Department's investigation revealed that Complainant wrote a threat to harm others and left the hand-written threat on her work equipment. Respondent's policy presents threats of violence as an action which would result in discharge. Respondent's documentation shows comparatives, who are sex, male, who were similarly discharged. Complainant has not provided evidence of a nexus between her discharge and her sex, female.

**Analysis-Count E:**

Complainant alleges that she was discharged based upon her race, black. Complainant asserts that, on October 14, 2014, a paper relating to a job posting was left on her bike (work equipment). It is uncontested that Complainant hand-wrote on the paper, including the statement "You'll be dead before I leave" and signed the paper.

Respondent provided its discipline/discharge policy which allows for discipline up to, and including discharge, for various violations, including "Engaging in acts of violence or making threats of violence". Respondent stated that Complainant was discharged based upon the severity of the incident and in accordance with its policy. Respondent provided documentation of four race, white comparatives, who were also discharged for violence in the workplace.

**Findings and Conclusion-Count E:**

A finding of <u>lack of substantial evidence</u> is recommended because:

The Department's investigation revealed that Complainant wrote a threat to harm others and left the hand-written threat on her work equipment. Respondent's policy presents threats of violence as an action which would result in discharge. Respondent's documentation shows comparatives, who are race, white, who were similarly discharged. Complainant has not provided evidence of a nexus between her discharge and her race, black.

**Analysis-Count F:**

Complainant alleges that she was discharged based upon her sexual orientation, homosexual. Complainant asserts that, on October 14, 2014, a paper relating to a job posting was left on her bike (work equipment). It is uncontested that Complainant hand-wrote on the paper, including the statement "You'll be dead before I leave" and signed the paper.

Respondent provided its discipline/discharge policy which allows for discipline up to, and including discharge, for various violations, including "Engaging in acts of violence or making threats of violence". Respondent stated that Complainant was discharged based upon the severity of the incident and in accordance with its policy. Respondent provided documentation of four comparatives (sexual orientation unknown to Respondent), who were also discharged for violence in the workplace.

**Findings and Conclusion-Count F:**

Charge No.: 2015SF1613
Page 12 of 14

A finding of lack of substantial evidence is recommended because:

The Department's investigation revealed that Complainant wrote a threat to harm others and left the hand-written threat on her work equipment. Respondent's policy presents threats of violence as an action which would result in discharge. Respondent's documentation shows comparatives, who were similarly discharged. Complainant has not provided evidence of a nexus between her discharge and her sexual orientation, homosexual.

## Analysis-Count G:

Complainant alleges that she was discharged in retaliation for opposing unlawful discrimination. Complainant alleges that she opposed unlawful discrimination on multiple occasions, by notifying members of Respondent's management team of incidents in which co-workers called her names referring to her race, gender and sexual identity. Complainant asserts that, on October 14, 2014, a paper relating to a job posting was left on her bike (work equipment). It is uncontested that Complainant hand-wrote on the paper, including the statement "You'll be dead before I leave" and signed the paper.

Respondent denied that Complainant had previously opposed unlawful discrimination by reporting discriminatory name calling being done by her co-workers. However, Respondent asserted that other complaints made by Complainant regarding her co-workers, had been addressed by Respondent. Respondent provided its discipline/discharge policy which allows for discipline up to, and including discharge, for various violations, including "Engaging in acts of violence or making threats of violence". Respondent stated that Complainant was discharged based upon the severity of the incident and in accordance with its policy. Respondent provided documentation of four comparatives, who have not opposed unlawful discrimination, who were also discharged for violence in the workplace.

## Findings and Conclusion-Count G:

A finding of lack of substantial evidence is recommended because:

The Department's investigation revealed that Complainant wrote a threat to harm others and left the hand-written threat on her work equipment. Respondent's policy presents threats of violence as an action which would result in discharge. Respondent's documentation shows comparatives, who have not opposed unlawful discrimination, who were similarly discharged. Complainant has not provided that her discharge was in retaliation for opposing unlawful discrimination.

## Witness List:

A. Arlinda Johns, (sex, female; race, black; sexual orientation, homosexual; has opposed unlawful discrimination) Complainant (phone interviews)
   2027 McCalla Ave.
   Knoxville, TN 37914

Charge No.: 2015SF1613
Page 13 of 14

(205) 504-2726

B. Brian Baker, (sex, male; race, white; sexual orientation, heterosexual; no prior opposition to unlawful discrimination) Truck Tire Technician (phone interview)
321 South Third Street
Marion, IL 62959
(618) 579-5735
This witness had no first hand information about Complainant's allegations.

C. Stephen Bishop, (sex, male; race, white; sexual orientation, heterosexual; no prior opposition to unlawful discrimination) Truck Tire Repairman
702 N. Rising Road
Champaign, IL 61822
(217) 714-0224

Witnesses D through H may be reached via Respondent's attorney:

Kim L. Kretzschmar
One Continental Drive
Auburn Hills, MI 48326
(248) 393-6440

D. Jonathan Baker, (sex, male; race, white; sexual orientation, heterosexual; no prior opposition to unlawful discrimination) Department Manager for Commercial Tire Vehicle (CVT) Department (phone interview)

E. Margaret (Meg) Hattendorf, (sex, female; race, white; sexual orientation, heterosexual; no prior opposition to unlawful discrimination) Human Resources Business Partner for Commercial Tire Vehicle (CVT) Department (phone interview)

F. Steve Capps, (sex, male; race, white; sexual orientation, heterosexual; no prior opposition to unlawful discrimination) Lead Supervisor in Curing and Final Finish Department (phone interview)

G. Justin Drew, (sex, male; race, white; sexual orientation, heterosexual; no prior opposition to unlawful discrimination) Final Finish Supervisor Commercial Tire Vehicle (CVT) Department (phone interview)

H. Kevin Elko, (sex, male; race, white; sexual orientation, heterosexual; no prior opposition to unlawful discrimination) (former) Human Respurces Supervisor (phone interview)

**Exhibits:**

A. Verified Response and Good Cause Determination Worksheet
B. Handwritten note from Complainant, left on her work equipment

Charge No.: 2015SF1613
Page 14 of 14

    C. Complainant's discharge document
    D. Respondent's anti-discrimination policy
    E. Respondent's documentation addressing Complainant sleeping on the job, use of steel toe boots, drawing of a stick figure, chalk on tires and Complainant's co-workers not wanting to work with her
    F. Complainant's documentation addressing Complainant's facebook posts
    G. Respondent's discipline/discharge policy
    H. Discharge documents of comparatives

IRSHELL
Rev 11/09

**Page two**
**Corrected Notice of Dismissal and Notice of Substantial Evidence**
**Charge Number:  2015SF1613**

Or, Complainant may:
7

        2.   Commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice.  A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed. **If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately.  The EEOC generally adopts the Department's findings.**  The Appellate Courts in Watkins v. Office of the State Public Defender, ___ Ill.App.3d ____, 976 N.E.2d 387 (1st Dist. 2012) and Lynch v. Department of Transportation, ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois **in the Illinois Circuit Court** are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

        If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC).  If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal.  Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order.  Any request filed prior to your receipt of a final notice WILL NOT BE HONORED.  Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois  60661.  Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

**PLEASE NOTE:  BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT.  IF AN APPOINTMENT IS REQUIRED, CALL 1-312-869-8000 OR 1-800-669-4000.**

## SUBSTANTIAL EVIDENCE

        YOU ARE HEREBY NOTIFIED, the Director has concluded that there is substantial evidence to support allegation(s) **A, B and C.**

### PROCEDURE

1.  Complainant may request that the Department file a complaint with the Human Rights Commission on his/her behalf:

**Page three**
**Notice of Dismissal and Notice of Substantial Evidence**
**Charge Number 2015SF1613**

a) Within thirty (30) days of receipt of this notice Complainant must notify the Department in writing if Complainant wishes the Department to file a complaint with the Human Rights Commission pertaining to allegation(s) listed above.  Complainant's request should be sent to Chief Legal Counsel, Illinois Department of Human Rights, 100 W. Randolph, Suite 10-100, Chicago, IL   60601.

b) If Complainant wishes the Department to file a complaint with the Human Rights Commission, the Illinois Human Rights Act (Act) permits the Department to conduct conciliation as to those issues where substantial evidence has been found.  Conciliation is a process in which a Department staff attorney facilitates settlement discussions with both parties via telephone.

c) All settlement efforts are confidential.  If it is determined there is not a reasonable possibility of settlement within ninety (90) days after receipt of this Notice, a complaint will be prepared against Respondent, filed with the Commission and notice of such filing shall be served on all parties, pursuant to Section 7A-102(F) of the Act.  It is then the parties' responsibility to go forward with the case at the Commission.

d) Conciliation of issues with Substantial Evidence findings does not preclude your filing a Request for Review of the issues the Department dismissed, as described above.

e) If the Complainant fails to timely request that the Department file the complaint, the Complainant may file his or her complaint with the Commission within ninety (90) days after receipt of this Notice.  If Complainant files a complaint with the Commission, Complainant must also give notice of such filing to the Department.

**Page four**
**Notice of Dismissal and Notice of Substantial Evidence**
**Charge Number 2015SF1613**

Or, Complainant may:

2. Commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed. **If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately. The EEOC generally adopts the Department's findings.** The Appellate Courts in <u>Watkins v. Office of the State Public Defender</u>, ___ Ill.App.3d ____, 976 N.E.2d 387 (1st Dist. 2012) and <u>Lynch v. Department of Transportation,</u> ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois **in the Illinois Circuit Court** are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

Please note that the Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.

DEPARTMENT OF HUMAN RIGHTS

Rocco J. Claps
Director

59 NOD/SPLIT
7/13

STATE OF ILLINOIS    )
                        ) ss
COUNTY OF COOK    )                 **FILE NO (S) 2015SF1613**

## AFFIDAVIT OF SERVICE

Gloria J. Polk, deposes and states that she served a copy of the attached

**NOTICE OF SUBSTANTIAL EVIDENCE AND NOTICE OF DISMISSAL** on each

person named below by depositing same this 13th day of April, 2016, in the U.S. Mail

Box at 100 West Randolph Street, Chicago, Illinois, properly posted for FIRST CLASS

MAIL, addresses as follows:

---

Arlinda Johns
3216 Ashland Avenue
Knoxville, TN 37914

Kim L. Kretzschmar
Senior Counsel
Continental
One Continental Drive
Auburn Hills, MI 48326

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

_____
Gloria J. Polk

**PLEASE NOTE:**

The above-signed person is responsible only for <u>mailing</u> these documents. If you wish a review of the findings in this case you must complete the Request for Review form attached. Department staff are not permitted to discuss the investigation findings once a Notice of Dismissal has been issued.

# EXHIBIT C –

# EEOC RIGHT TO SUE LETTER

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  Arlinda Johns
     c/o Edward R. Moor, Esq.
     Moor Law Office
     One North LaSalle Street, Suite 600
     Chicago, IL 60602

From:  Chicago District Office
       500 West Madison St
       Suite 2000
       Chicago, IL 60661

[ ]  *On behalf of person(s) aggrieved whose identity is*
     *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 21B-2015-00535 | Daniel Lim,<br>State & Local Coordinator | (312) 869-8082 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Julianne Bowman/kt*                                    September 2, 2016

**Julianne Bowman,**                                    *(Date Mailed)*
**District Director**

Enclosures(s)

cc:  **CONTINENTAL TIRE THE AMERICAS LLC**
     c/o Kim L. Kretzschmar, Esq.
     **Senior Counsel**
     **One Continental Drive**
     **Auburn Hills, MI 48326**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.

**RECEIVED**
DEC 29 2014    # 15M1215.11
Dept. of Human Rights
Springfield

| AGENGY | CHARGE NUMBER |
|---|---|
| ☒ IDHR | 2015SF1613 |
| ☐ EEOC | |

## Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.) | TELEPHONE NUMBER (include area code) |
|---|---|
| Ms. Arlinda Johns | 618-751-1259 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 712 Ruggerio | Herrin, Illinois 62948 | 10 / 19 / 1975 |
| | | M   D   Y |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE NUMBER (include area code) |
|---|---|---|
| Continental General Tire | | 618-242-1700 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 11525 N. IL HWY 142 | Mt. Vernon, Illinois 62864 | Jefferson |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| Sex; female, Race; black, Sexual Orientation; homosexual, Retaliation | 10/22/2014 |
| | ☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

I.      A.    **ISSUE/BASIS**
             Harassment from June 14, 2014 to October 22, 2014 because of Sex; female.

        B.    **PRIMA FACIE ALLEGATIONS**
             1.   I am female.
             2.   I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
             3.   From June 14, 2014 to October 22, 2014, I reported to John Baker, Steve Capps, Doug Sieger, Justin Drew, Ryan Laney, Kevin Elko, and JD Burke that I was being harassed by my coworkers but the harassment continued.
             4.   It is my belief that Respondent does not permit similarly situated male employees to be harassed.

Page 1 of 3                    **CONTINUED**                              rys

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME THIS 22 DAY OF December , 2014 X _Jodi L. Miller_ NOTARY SIGNATURE |
|---|---|
| **OFFICIAL SEAL** JODI L. MILLER Notary Public, State of Illinois My Commission Exp 2/03/2015  NOTARY STAMP | X _Arlinda Johns_  12/22/14 SIGNATURE OF COMPLAINANT    DATE I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief |

EEO-5 FORM (Rev. 11/09-INT)

Charge Number: 2015SF1613
Control Number: 15M1215.11
Complainant:    Johns
Page 2 of 3

II.      A.     **ISSUE/BASIS**
                Harassment from June 14, 2014 to October 22, 2014 because of race;
                black.

         B.     **PRIMA FACIE ALLEGATIONS**
                1.    My race is black.
                2.    I performed my duties of Final Finish Setup Technician in a
                      manner consistent with policy.
                3.    From June 14, 2014 to October 22, 2014, I reported to John Baker,
                      Steve Capps, Doug Sieger, Justin Drew, Ryan Laney, Kevin Elko,
                      and JD Burke that I was being harassed by my coworkers but the
                      harassment continued.
                4.    It is my belief that Respondent does not permit similarly situated
                      non-black employees to be harassed.

III.     A.     **ISSUE/BASIS**
                Harassment from June 14, 2014 to October 22, 2014 because of sexual
                orientation; homosexual.

         B.     **PRIMA FACIE ALLEGATIONS**
                1.    My sexual orientation is homosexual.
                2.    I performed my duties of Final Finish Setup Technician in a
                      manner consistent with policy.
                3.    From June 14, 2014 to October 22, 2014, I reported to John Baker,
                      Steve Capps, Doug Sieger, Justin Drew, Ryan Laney, Kevin Elko,
                      and JD Burke that I was being harassed by my coworkers but the
                      harassment continued.
                4.    It is my belief that Respondent does not permit similarly situated
                      heterosexual employees to be harassed.

IV.      A.     **ISSUE/BASIS**
                Termination on October 22, 2014 because of sex; female.

         B.     **PRIMA FACIE ALLEGATIONS**
                1.    I am female.
                2.    I performed my duties of Final Finish Setup Technician in a
                      manner consistent with policy.
                3.    On October 22, 2014, John Baker and Meg Whittendorf terminated
                      me for alleged misconduct after I wrote a letter to my coworkers
                      telling them to stop harassing me.
                4.    It is my belief that Respondent has not terminated similarly
                      situated male employees for opposing harassment.

Charge Number:  2015SF1613
Control Number:  15M1215.11
Complainant:    Johns
Page 3 of 3

V.        A.      **ISSUE/BASIS**
                  Termination on October 22, 2014 because of race; black.

          B.      **PRIMA FACIE ALLEGATIONS**
                  1.    My race is black.
                  2.    I performed my duties of Final Finish Setup Technician in a
                        manner consistent with policy.
                  3.    On October 22, 2014, John Baker and Meg Whittendorf terminated
                        me for alleged misconduct after I wrote a letter to my coworkers
                        telling them to stop harassing me.
                  4.    It is my belief that Respondent has not terminated similarly
                        situated non-black employees for opposing harassment.

VI.       A.      **ISSUE/BASIS**
                  Termination on October 22, 2014 because of sexual orientation;
                  homosexual.

          B.      **PRIMA FACIE ALLEGATIONS**
                  1.    My sexual orientation is homosexual.
                  2.    I performed my duties of Final Finish Setup Technician in a
                        manner consistent with policy.
                  3.    On October 22, 2014, John Baker and Meg Whittendorf terminated
                        me for alleged misconduct after I wrote a letter to my coworkers
                        telling them to stop harassing me.
                  4.    It is my belief that Respondent has not terminated similarly
                        situated heterosexual employees for opposing harassment.

VII.      A.      **ISSUE/BASIS**
                  Termination on October 22, 2014 because of retaliation.

          B.      **PRIMA FACIE ALLEGATIONS**
                  1.    In September 2014, I opposed discrimination to John Baker.
                  2.    I performed my duties of Final Finish Setup Technician in a
                        manner consistent with policy.
                  3.    On October 22, 2014, John Baker and Meg Whittendorf terminated
                        me for alleged misconduct after I wrote a letter to my coworkers
                        telling them to stop harassing me.
                  4.    It is my belief that Respondent has not terminated similarly
                        situated employees who did not oppose discrimination.

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.<br><br>**# 15M1215.11A** | AGENCY<br>☒ IDHR<br><br>☐ EEOC | CHARGE NUMBER<br><br>2015SF1613 |
|---|---|---|

**Illinois Department of Human Rights and EEOC**

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.)<br>Ms. Arlinda Johns | TELEPHONE NUMBER (include area code)<br>618-751-1259 | |
|---|---|---|

| STREET ADDRESS<br>712 Ruggerio | CITY, STATE AND ZIP CODE<br>Herrin, Illinois 62948 | DATE OF BIRTH<br>10 / 19 / 1975<br>M    D    Y |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT<br>Continental Tire the Americas, LLC | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE NUMBER (include area code)<br>618-242-1700 |
|---|---|---|

| STREET ADDRESS<br>11525 N. IL HWY 142 | CITY, STATE AND ZIP CODE<br>Mt. Vernon, Illinois 62864 | COUNTY<br>Jefferson |
|---|---|---|

| CAUSE OF DISCRIMINATION BASED ON:<br><br>Sex; female, Race; black, Sexual Orientation; homosexual, Retaliation | DATE OF DISCRIMINATION<br>EARLIEST (ADEA/EPA) LATEST (ALL)<br>10/22/2014<br>☐ CONTINUING ACTION |
|---|---|

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

## TECHNICAL AMENDMENT
**\*This technical amendment is being made to correct Respondent's legal name.**

I.    A.    ISSUE/BASIS
Harassment from June 14, 2014 to October 22, 2014 because of Sex; female.

      B.    PRIMA FACIE ALLEGATIONS
      1.    I am female.
      2.    I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
      3.    From June 14, 2014 to October 22, 2014, I reported to John Baker, Steve Capps, Doug Sieger, Justin Drew, Ryan Laney, Kevin Elko, and JD Burke that I was being harassed by my coworkers but the

| Page 1 of 3 | CONTINUED | rys |
|---|---|---|

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME<br><br>THIS 27 DAY OF May , 2015<br><br>X _____<br>NOTARY SIGNATURE |
|---|---|
| **OFFICIAL SEAL**<br>**JULIE ELDERS**<br>Notary Public - State of Illinois<br>My Commission Expires Mar 26, 2019<br><br>NOTARY STAMP | X Arlinda Johns      5-27-15<br>SIGNATURE OF COMPLAINANT      DATE<br><br>I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief |

EEO-5 FORM (Rev. 11/09-INT)

Charge Number:   2015SF1613
Control Number:  15M1215.11A
Complainant:     Arlinda Johns
Page 2 of 3

     harassment continued.

4.    It is my belief that Respondent does not permit similarly situated male employees to be harassed.

**II.**    **A.**    **ISSUE/BASIS**
Harassment from June 14, 2014 to October 22, 2014 because of race; black.

    **B.**    **PRIMA FACIE ALLEGATIONS**
1.    My race is black.
2.    I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3.    From June 14, 2014 to October 22, 2014, I reported to John Baker, Steve Capps, Doug Sieger, Justin Drew, Ryan Laney, Kevin Elko, and JD Burke that I was being harassed by my coworkers but the harassment continued.
4.    It is my belief that Respondent does not permit similarly situated non-black employees to be harassed.

**III.**    **A.**    **ISSUE/BASIS**
Harassment from June 14, 2014 to October 22, 2014 because of sexual orientation; homosexual.

    **B.**    **PRIMA FACIE ALLEGATIONS**
1.    My sexual orientation is homosexual.
2.    I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3.    From June 14, 2014 to October 22, 2014, I reported to John Baker, Steve Capps, Doug Sieger, Justin Drew, Ryan Laney, Kevin Elko, and JD Burke that I was being harassed by my coworkers but the harassment continued.
4.    It is my belief that Respondent does not permit similarly situated heterosexual employees to be harassed.

**IV.**    **A.**    **ISSUE/BASIS**
Termination on October 22, 2014 because of sex; female.

    **B.**    **PRIMA FACIE ALLEGATIONS**
1.    I am female.
2.    I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3.    On October 22, 2014, John Baker and Meg Whittendorf terminated me for alleged misconduct after I wrote a letter to my coworkers telling them to stop harassing me.
4.    It is my belief that Respondent has not terminated similarly situated male employees for opposing harassment.

Charge Number:   2015SF1613
Control Number:   15M1215.11A
Complainant:   Arlinda Johns
Page 3 of 3

**V.**  **A.**  **ISSUE/BASIS**
Termination on October 22, 2014 because of race; black.

**B.**  **PRIMA FACIE ALLEGATIONS**
1.  My race is black.
2.  I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3.  On October 22, 2014, John Baker and Meg Whittendorf terminated me for alleged misconduct after I wrote a letter to my coworkers telling them to stop harassing me.
4.  It is my belief that Respondent has not terminated similarly situated non-black employees for opposing harassment.

**VI.**  **A.**  **ISSUE/BASIS**
Termination on October 22, 2014 because of sexual orientation; homosexual.

**B.**  **PRIMA FACIE ALLEGATIONS**
1.  My sexual orientation is homosexual.
2.  I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3.  On October 22, 2014, John Baker and Meg Whittendorf terminated me for alleged misconduct after I wrote a letter to my coworkers telling them to stop harassing me.
4.  It is my belief that Respondent has not terminated similarly situated heterosexual employees for opposing harassment.

**VII.**  **A.**  **ISSUE/BASIS**
Termination on October 22, 2014 because of retaliation.

**B.**  **PRIMA FACIE ALLEGATIONS**
1.  In September 2014, I opposed discrimination to John Baker.
2.  I performed my duties of Final Finish Setup Technician in a manner consistent with policy.
3.  On October 22, 2014, John Baker and Meg Whittendorf terminated me for alleged misconduct after I wrote a letter to my coworkers telling them to stop harassing me.
4.  It is my belief that Respondent has not terminated similarly situated employees who did not oppose discrimination.

DWW/yjt

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

## PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf, your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

IF THE FIRST THREE CHARACTERS OF YOUR EEOC CHARGE NUMBER ARE "21B" AND YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE MUST BE DIRECTED TO IDHR.

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with Disabilities Act or, probably, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

## ATTORNEY REPRESENTATION

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.

## DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.

# INFORMATION ON WHERE TO FILE SUIT

You have been notified of your right to sue in Federal District Court. Suit is ordinarily filed in the District having jurisdiction of the county in which the employer, against whom you filed a Charge of employment discrimination, is located. The telephone number listed for each District is that of the Clerk of the Court.

| U.S. DISTRICT COURT<br>Northern District of Illinois<br>**Eastern Division at Chicago**<br>219 South Dearborn Street<br>Chicago, IL 60604<br>312-435-5670 | | U.S. DISTRICT COURT<br>Central District of Illinois<br>**Urbana Division**<br>201 South Vine<br>Urbana, IL 61801<br>217-373-5830 | |
|---|---|---|---|
| **Counties** | | **Counties** | |
| Cook | Kendall | Champaign | Kankakee |
| DuPage | Lake | Coles | Macon |
| Grundy | LaSalle | Douglas | Moultrie |
| Kane | Will | Edgar | Piatt |
| | | Ford | Vermillion |
| | | Iroquois | |
| U.S. DISTRICT COURT<br>Northern District of Illinois<br>**Western Division at Rockford**<br>211 South Court Street<br>Federal Building<br>Rockford, IL 61101<br>815-987-4355 | | **Peoria Division**<br><br>100 N.E. Monroe Street<br>135 Federal Building<br>Peoria, IL 61602<br>309-671-7117 | |
| **Counties** | | **Counties** | |
| Boone | McHenry | Bureau | McLean |
| Carroll | Ogle | Fulton | Peoria |
| DeKalb | Stephenson | Hancock | Putnam |
| JoDaviess | Whiteside | Knox | Stark |
| Lee | Winnebago | Livingston | Tazewell |
| | | Marshall | Woodford |
| | | McDonough | |
| U.S. DISTRICT COURT<br>Southern District of Illinois<br>750 Missouri Avenue<br>East St. Louis, IL 62201<br>618-482-0671<br><br>*and*<br><br>301 Main Street<br>Benton, IL 62812<br>618-438-0671 | | **Rock Island Division**<br>211 19th Street<br>Rock Island, IL 61201<br>309-793-5778 | |
| **Counties** | | **Counties** | |
| Alexander | Johnson | Henderson | Rock Island |
| Bond | Lawrence | Henry | Warren |
| Calhoun | Madison | Mercer | |
| Clark | Marion | **Springfield Division** | |
| Clinton | Monroe | 600 East Monroe Street | |
| Crawford | Perry | Springfield, IL 62701 | |
| Cumberland | Pope | 217-492-4020 | |
| Edwards | Pulaski | | |
| Effingham | Randolph | **Counties** | |
| Fayette | Richland | Adams | Logan |
| Franklin | St. Clair | Brown | Macoupin |
| Gallatin | Saline | Cass | Mason |
| Hamilton | Union | Christian | Menard |
| Hardin | Wabash | DeWitt | Montgomery |
| Jackson | Washington | Green | Morgan |
| Jasper | Wayne | Pike | Schuyler |
| Jefferson | White | Shelby | |
| Jersey | Williamson | | |